## Fire Association of Philadelphia v. George W. Short, for use of F. A. Short.

1. CHANGE OF VENUE—*Reasonable Notice Required in Application for.*—Under the provisions of Sec. 5, Chap. 126, Starr & C., reasonable notice to the adverse party or his attorney is a condition precedent to a legal right to a change of venue, and an application for a change must be tested by its terms.

2. SAME—*When Not Error to Refuse Application for.*—An application for a change of venue is properly refused where the notice as to the time when it was served on the plaintiff's attorney is indefinite, and does not show that it could not have been served at an earlier time, and is not signed by a party to the record.

3. NOTICES—*Must be in Writing Unless Otherwise Provided.*—The weight of authority seems to be that all notices required by statute, unless otherwise provided, must be in writing.

4. INSURANCE—*Construction of Clause in a Policy Requiring Insured to Keep a Fire-proof Safe.*—Insured has complied with the condition in his policy which requires him to keep a fire-proof safe, where he in good faith buys a safe represented and sold on the market as a fire-proof safe, believing it to be such. To hold otherwise would be to hold that every one insured under such a condition becomes on his part an insurer and guarantor of the quality of his safe as to it being fire-proof.

5. SAME—*Policies to be Most Favorably Construed to the Insured.*—A condition that would defeat an insurance policy must be expressed, or so clearly implied that it can not be misconstrued. Insurance companies write and sign their policies, and where there are doubtful constructions they will be held against the insurer. Policies must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim for indemnity.

Assumpsit, on a policy of insurance. Appeal from the County Court of Alexander County; the Hon. WILLIAM S. DEWEY, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

Assumpsit by appellee against appellant on a policy of insurance for one thousand dollars on a stock of merchandise in a two-story frame building at the village of Idlewild, sometimes called Tamms, Illinois.

The policy was issued March 15, 1900, and the fire occurred April 22, 1900. There is evidence that the value of the merchandise on hand at the time of the fire was

about $1,600, with a salvage of $183, making the net loss $1,113.75. The policy covered three-fourths of the cash value of the property insured, not to exceed $1,000. Judgment for $1,000.

The policy contained these provisions:

" It is a part of the consideration for which this policy is issued, and the base upon which the rate of premium is fixed, that assured under this policy hereby covenants and agrees to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash, credit and exchange, together with the last detailed inventory of stock which shall have been taken within twelve months prior to the date of the happening of any loss; and further covenants and agrees to keep such books and inventory securely locked in a fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house where said business is carried on. And in case of loss the assured agrees and covenants to produce such books and inventory; and in the event of a failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained for any such loss."

To the declaration the general issue was pleaded, and six special pleas setting up in various forms that the assured failed to keep books and inventory; failed to keep books and inventory in a fire-proof safe, and failed to produce them in conformity with the terms of the policy.

None of these special pleas alleges that the failure of appellee to comply with these provisions with reference to the keeping, preservation, or production of said books and inventory was fraudulently done.

Appellee set up in replications to these special pleas that he did keep books as required by the policy, and that he kept the same in an iron safe which purported to be fire-proof, and which he believed to be fire-proof, and that said books were in said safe with the door securely closed and fastened at the time of said fire, and that said books, without any fraud on the part of the appellee, or any intention on his part to injure appellant, were, by reason of the fact that said safe proved not to be fire-proof, destroyed by the fire

which destroyed said stock of merchandise, and that appellee could not therefore produce said books to appellant.

Appellee also filed replications alleging that the adjuster of appellant waived the clause requiring appellee to produce the same by negotiating with appellee concerning the payment of said loss and by offering him in satisfaction thereof the sum of $500.

Issue was taken upon these replications except the first replication to the special additional plea number two.

This plea alleges that appellee, after the issuance of said policy, did not have, take or keep any inventory of the stock covered by said policy, and that at the time of the happening of the fire mentioned in appellee's declaration, he did not have any inventory of such stock in a fire-proof safe, or in any other secure place not exposed to such fire, and that after the loss and damage by fire, appellee did not produce such inventory of such stock.

To this plea appellee replied that the policy of insurance was issued on the 15th day of March, 1900, and that the fire occurred on the 22d day of April, 1900, and that but the space of thirty-eight days had elapsed between the issuance of said policy of insurance and the destruction of the merchandise so insured, and that he, the appellee, had not, within twelve months next immediately prior to the fire, taken a detailed inventory of the said stock covered by the said policy of insurance. The replication concluded with a verification.

Appellant demurred to this replication and the court overruled said demurrer and appellant stood by its demurrer.

WHITNEL & GILLESPIE, attorneys for appellant.

WILLIAM N. BUTLER and LANSDEN & LEEK, attorneys for appellee.

MR. PRESIDING JUSTICE WORTHINGTON delivered the opinion of the court.

In addition to other assignments of error, appellant urges

that the court erred in not granting a change of venue on account of alleged prejudice of the trial judge.

The suit was commenced to the March term, 1901, of the County Court of Alexander County. The record shows that on the 11th day of June, 1901, by agreement of parties, the case was continued for hearing until 2 o'clock P. M., June 24th. The petition for change of venue avers that knowledge of the prejudice of the judge did not come to defendant nor to affiant until one o'clock June 24th, and that " notice was given to plaintiff's counsel of this application as soon thereafter as they could be found."

Sec. 5, Chap. 126, Starr & Curtis, provides :

" The application may be made to the court in which the case is pending in term time, or to the judge thereof in vacation, reasonable notice thereof having been given to the adverse party or his attorney."

Reasonable notice to plaintiff, or to his attorney, was then a condition precedent to a legal right to a change of venue. The application for change must be tested by its terms; no intendments in favor of appellant are to be indulged.

The time when notice was given to plaintiff's attorneys is not specified. It is averred to have been as soon as they could be found after knowledge of the prejudice of the judge came to appellant or to affiant. Although notice to plaintiff's attorneys may have been given as soon as they could be found, it does not follow that plaintiff could not be found before his attorneys were found, and notice to him would have been as effectual as notice to his attorneys.

The presumption from what appears in the record, is that application for a change of venue was not made until the convening of court at 2 o'clock P. M. on June 24th, that being the hour and day the case, by agreement, was set for hearing. How affiant could state at 2 o'clock P. M. that knowledge had come at 1 o'clock P. M. to defendant, a Philadelphia corporation acting through its board of directors, is not easy to understand.

It will be noted also, that the application for a change of venue does not purport to be signed by appellant. It is

signed as follows: "S. Y. Hawkins, Special Agent and Adjuster Fire Association, Philadelphia."

It is said in Crowell v. Maughs, 2 Gilman, 422:

"Our statute only authorizes the parties to obtain a change of venue. The application must be made by a party to the record, and the petition must be verified by his affidavit."

It was subsequently said in Com. Ins. Co. v. Mehlman, 48 Ill. 316:

"This corporation is one party and the only real question is, how, being a party, can it make the requisite affidavit? * * * The spirit and reason of the law would require us to regard a recognized officer of the corporation as a party, *pro hac vice.*"

That is to say, to regard a recognized officer of a corporation as a party authorized to make affidavit for a change of venue. But in this same case it is said, in reference to Crowell v. Maughs, *supra:*

"The court said, and very properly, that the statute only authorizes the parties to obtain a change of venue, and the application must be made by a party to the record, the petition being verified by affidavit."

Since the notice is indefinite as to the time when it was served on plaintiff's attorneys, and since, also, it does not show that it could not have been served upon plaintiff at an earlier time, and since, too, the application is not signed by a party to the record, we think there was no error in refusing a change of venue. Taking this view, it is not necessary to discuss at length the question presented as to whether a notice for change of venue must be in writing, but it may be passed with saying, that the weight of authority seems to be that all notices required by statute, unless otherwise provided, must be in writing. There was, then, no error in refusing a change of venue.

It is urged that the assured can not recover because he did not keep his books in a fire-proof safe. The evidence is that the books of the assured were in an iron safe, which was not locked. When turned over after the fire, the door opened and the books were disclosed. They were in such

condition as to afford but little information of their contents. Appellee testified that it was a large iron safe, made for fire-proof. That it was bolted but not locked, the combination being out of order. There is other evidence that it was a large iron safe. The condition in a policy that requires the insured to keep his books in a fire-proof safe, must receive a reasonable construction. Such construction does not require that the safe shall be absolutely fire-proof. It is a matter of common knowledge that safes of different styles and made by different factories, are put on the market as fire-proof safes. When a party in good faith buys a safe represented and sold in the market as a fire-proof safe, believing it to be such, he has complied with the condition in his policy which requires him to keep a fire-proof safe. To hold otherwise would be to hold that every one insured under such a condition, becomes on his part an insurer and guarantor of the quality of his safe as to its being fire-proof. Such is not the requirement of the policy when fairly construed. Liverpool-London & Globe Ins. Co. v. Kearney, No. 7 Advance Sheets, L. R. A., Opinions Supreme Court U. S., p. 326, case decided Jan. 7, 1891; Knoxville Fire Ins. Co. v. Hird, 4 Texas Civil Appeals Report, page 82.

Appellee testifies that in the safe when burned were cash book, tie book, ledger and blotter; that in the ledger was entered the valuation of the goods that were moved to the store at Tamms from the Elko store; that sales were for cash, and all cash received was entered in cash book. It appears that appellee had a store at Elko, from which he brought merchandise to his store at Tamms. These were entered in the ledger with classified values, for instance, shoes, twelve dollars. He testifies that he "moved from Elko $983.24; that he bought about $876, and kept the bills from the wholesale houses in a book, but did not keep a bill book." He further testifies that he had made no invoice or inventory of his goods at the Tamms store. That it opened March 6, 1901, and was burned April 22d of the same year, and that he had procured duplicate bills from the wholesale houses, presumably to replace bills that were destroyed.

In the absence of evidence tending to show fraud, we think that the jury was warranted from the testimony in finding for appellee, that he had substantially complied with the conditions of the policy requiring books to be kept and produced. The books might not have been such as an expert book-keeper would have used in an extensive business. But this business was not extensive. It was a retail store, with a stock less than $2,000 in value, kept in a country village, and conducted on a cash basis. He did produce his ledger, partially destroyed it is true, but showing the value, in classes, of merchandise brought from the Elko store, and also produced duplicate bills of goods purchased subsequently.

The policy did not require that an inventory should be taken. What it did require was that the last inventory of stock taken within twelve months preceding the fire should be kept and produced. The store was only operated about forty days.

If appellant had required an invoice before issuing the policy, or that an inventory should be taken at any time thereafter, it is fair to presume that it would have been so specified.

A condition that would defeat a policy must be expressed, or so clearly implied that it can not be misconstrued.

Insurance companies write and sign their policies. Where there are doubtful constructions they will be held against the insurer. Policies of insurance must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim for indemnity. May on Insurance, 2d Ed., Sec. 175; Niagara Fire Ins. Co. v. Scammon, 100 Ill. 644; Healy v. Mutual Accident Ass'n, 133 Ill. 561; Com. Ins. v. Robinson, 64 Ill. 269; Fireman's Fund Ins. Co. v. Western Refrigerating Co., 55 Ill. App. 334.

There was no error, then, in overruling appellant's demurrer to first replication to second plea. So holding, it is not necessary to notice the alleged errors in the third instruction for appellee and the modification of appellant's eighth and twentieth instructions.

From a careful examination of the evidence, we are impressed with the conviction that substantial justice has been adjudged, and that there is no reversible error in the record. The judgment will therefore be affirmed.