Mabkowitz, J.
(dissenting). The Trial Judge made two basic factual findings, substantiated by the record, which are dispositive and call for affirmance of the judgment.
The first finding is that there was no breach of the warranty to keep a detailed stock record: ‘ ‘ The plaintiff introduced evidence showing that it did keep a card inventory record of its jewelry. In good faith, it could have affirmatively answered that it kept a detailed stock record ’ ’. As called for by the authorities, the Trial Judge liberally construed what constitutes bookkeeping methods for small manufacturers and small retail shops (Hartol. Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49; B & H Mgt. Corp. v. Hardware Mut. Cas. Co., 9 A D 2d 533, 535; D’Agostino Excavators v. Globe Ind. Go., 7 A D 2d 483, 485). He properly resolved any ambiguity in favor of the insured.
To be vulnerable, plaintiff’s books must have been intended to deceive. Honest books may be supplemented by oral testimony to supply the basis for an accurate estimate of the loss. (Licht v. New York Ind. Co., 250 N. Y. 211, 214.)
In Licht {supra, p 214), Lehman, J., thereafter Ch.J., wrote: ‘ ‘ It has been said that the ‘ courts should not take a narrow and restricted view of the ¿lause relative to the keeping of books and accounts to defeat a claim otherwise unassailable. ’ (Mord v. New York Indemnity Co., 216 App. Div. 252; affd. 244 N. Y. 589, and cases there cited.) We accept that policy as a guiding principle. Within the meaning of the contract of insurance, honest books and vouchers, though the entries be made in a crude, unscientific manner and require explanation and even supplement by oral statement, may yet supply the basis for an accurate estimate of the loss. At least, however, the books must be intended to reflect truly the cost or value of the goods insured. Books intended to deceive are not in any true sense books of account.”
Our statute mandates that no “ breach of warranty shall avoid an insurance contract or defeat recovery thereunder unless such breach materially increased the risk of loss, damage or injury within the coverage of the contract.” (Insurance Law, § 150, subd. 2). c
Similarly, no “ misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepre *566 sentation was material. No representation shall be deemed material unless knowledge by the insurer of the faets? misrepresented would have led to a refusal by the insurer to make such contract.” (Insurance Law, § 149, subd. 2).
Defendant has not met the proviso in either of these sections of the Insurance Law.
Harris v. General Acc. Fire & Life Assur. Corp. (187 N. Y. S. 291), cited by my brethren, is not controlling. In that case (p. 292) “ plaintiff kept no books or records of any sort, which would in and by themselves indicate what merchandise had been sold during the year 1919 previous to the day of the loss.” (Cf. Lenzner v. National Sur. Co., 209 App. Div. 464; Garten v. General Acc. Fire & Life Assur. Corp. of Perth, Scotland, 206 App. Div. 154, 156, 158.)
In the case at bar, plaintiff did keep records which it could honestly believe complied with the policy (see Bronx Sav. Bank v. Weigandt, 1 N Y 2d 545, 551). This included a detailed inventory of what plaintiff’s officer took home, prepared by him before the loss. This being so, defendant’s contention that these records were not enough to satisfy the condition in its policy must be resolved in favor of the insured (Muller v. Sun Ind. Co. of N. Y., 302 N. Y. 634, 636, affg. 276 App. Div. 1028).
The second finding by the Trial Judge was that nothing was gained or lost by the failure to list the officer in the policy as a person who took property from the premises. I agree with his interpretation “ that the very design of the policy was to cover the situation here involved ”. The intent of the policy was to give extra coverage, at a greater premium, to the traveling salesman or outside man who systematically toured a territory for an appreciable length of time with covered jewelry in his possession. As to an employee who occasionally took a small amount of jewelry from the premises, the policy limited liability to $5,000 (combination endorsement, § 2). The very language of the section is that the limit of the policy is $5,000 “ unless the name of such individual is listed hereunder.” (Emphasis supplied.) Plaintiff’s employee involved in this case was not a salesman; he was an officer and inside man, who took jewelry home from time to time to show to friends and relatives. Hence, it was not necessary to list him in the policy.
No question is raised by defendant but that he was a good risk, and would have been insured had he been listed. Failure to keep proper records, and not listing the officer in the policy, were the only bases on which defendant denied liability. For the reasons stated, I find them wholly without merit.
*567 Plaintiff had carried this, or similar burglary insurance with defendant for five years or more before the loss. Defendant does not attack the claim of burglary. It does not question the honesty of the officer. It does not charge fraud. It does not say that the officer testified falsely. It does not say that plaintiff failed to follow its instructions for keeping records. Hone of these elements are present in this case. Instead, having accepted premiums without audit or instructions for over five years, and a loss having finally occurred, defendant seeks to hang its hat on naked technicalities to avoid its side of the bargain. On this record it has not established its right to do so.
I therefore dissent and vote to affirm.
Quinn, J. P., and Lupiano, J., concur in Per Curiam opinion; Markowitz, J., dissents in memorandum.
Judgment reversed and complaint dismissed with $30 costs.