BARNETTE, Judge.
Plaintiff Reuben L. Hammond brought this suit for recovery of benefits under a storekeepers burglary and robbery policy issued to him by defendant covering his drugstore in the city of New Orleans. He sought $952.73, the loss alleged to have been sustained as the result of two burglaries and one robbery within a period of 10 days in June, 1962. He also claims, under LSA-R.S. 22:658, a penalty of 12' percent and attorney’s fees for defendant’s refusal to pay the claim. The judgment in the trial court awarded plaintiff only $32.62, and he has brought this appeal.
The defendant admitted the issuance of' a policy to plaintiff but denied liability for the alleged reason that plaintiff failed to comply with a condition of the policy which reads as follows:
“The insured shall keep records of all the insured property in such manner that *320 the company can accurately determine therefrom the amount of loss.”
There is no dispute that plaintiff’s store was burglarized on June 11, 1962, but plaintiff’s statement as to the amount of the loss, $207.44, was challenged. On June IS, there was another burglary, and the alleged loss of $91.44 was challenged. On June 20, plaintiff was the victim of a robbery. His alleged loss of $640 in cash was challenged. The loss of $13.85 in narcotics was established by proper records and was admitted
In his reasons for judgment, dictated into the transcript at the conclusion of the trial, the judge said:
“The defendant contends that the plaintiff did not keep such books as in accordance with the clause of the policy just quoted and that it is impossible for them to determine from books or records of the insured what the amount of his loss was.
“The case was tried by deposition, which was introduced into the record and which was read to the Court.
“In condensing the testimony of the plaintiff, as given by deposition, it appears that the plaintiff’s method of arriving at his loss was to visually look at his stock upon his shelves, for instance, cigarettes, and know that he kept his stock at a certain level, that is, he knew in his mind, so he claims that he kept his stock at a certain level and,. therefore, by subtracting the number of cigarettes, we’ll say, that he should keep, Lucky Strikes 10, in his level there were only five, then he arrived a a loss of five with reference to cigarettes of that particular part of the property damage.
“In reference to the loss of funds from his safe, he testified as the Court recalls, that he always kept constantly a sum of $750.00 in his safe and, therefore, by a method of deduction, he knew how much he lost on that occasion, although he testifies he had some $300.00 in his pocket at the time of the robbery.
“Quoting from his testimony, he said, ‘I arrived at the merchandise loss by inspecting the shelves of my store with the knowledge of what I normally carry. I inventory my stock once a year during December and I could not, I had no accounting records of the contents of my safe, but kept ten dollars in pennies, forty dollars in nickels, forty dollars in quarters, a hundred dollars in dollar-bills and a hundred dollars in five-dollar bills.
“ T was also robbed of $350.00, which I had in my pocket.’
“In the Court’s opinion, the plaintiff has not carried out his part of the contract, which he was bound to do and that is to keep such books and records in order that his losses could be readily ascertained by the insurance company.
“Counsel for the plaintiff points to the case of Purity Reese [Reiss] Company vs. Maryland Casualty Company [La.App., 128 So.2d 677] and the Court will observe that in this particular case at page 682, in paragraph No. 2 that the critical words in the policy, ‘which the insured can conclusively prove,’ these are not the words of the policy before this Court.
“This is a condition in a policy which could be said akin to the iron safe clause where a merchant is required to keep his books and records in an iron safe in the case of fire and the failure to do so vitiates the claim of the claimant to collect and the Court believes this is the same situation here, however, it has been admitted by the insurance company that the sum of $13.85, which were determined to be narcotic loss and $8.00 for property damage and 10.77 on another occasion making a total of $32.62.
“Accordingly, there’ll be judgment in favor of the plaintiff for that amount.”
*321 We have carefully examined the record with the particular attention to plaintiff’s alleged loss by robbery of $640 in cash. We have been unable to find any evidence that plaintiff kept any record whatever from which this alleged loss can be established. There were no book entries, no cash register slips, and no banking records. This is not so much a case of poorly kept books and records as it is that he kept no records at all. This was a violation of the insured’s contractual obligation.
The factual situation here is strikingly parallel to that in Romano v. Southern Marine & Aviation Underwriters, Inc., 142 So.2d 568 (La.App. 4th Cir. 1962). There the policy contained a record-keeping clause in the following language:
“ ‘Underwriters shall not be liable for loss: (1) unless records are kept by the Assured in such manner that Underwriters can accurately determine therefrom the amount of the loss ;***.’ ” 142 So.2d at 569.
The conclusion of the trial judge, in which we concurred, was that the plaintiff failed to comply with the record-keeping clause in the policy and for that reason was not entitled to recover.
Plaintiff has relied on our opinion in Purity-Reiss Candy Co. v. Maryland Cas. Co., 128 So.2d 677 (La.App. 4th Cir. 1961), where we allowed recovery against the insurer for losses resulting from thefts of merchandise by employees of the insured over a period of two years. The issue there was not one of failure to keep books and records, but the method used by plaintiff in establishing the loss from its records. The question was one of conclusiveness of proof as required by the terms of the blanket position bond. Under its terms, the insurer was liable for the loss “which the Insured shall conclusively prove.” We held there that the plaintiff had reasonably proved the amount of the loss by an acceptable method. Clearly, Purity-Reiss is distinguished from this case and the Romano case by the terms of the policy.
We have no doubt that plaintiff sustained losses in the burglaries and robbery. While uncertain and lacking in conclusiveness of proof, his claims appear not to be unreasonable. But at best they are only approximations, and we cannot give him any relief, not so much because of the inconclusiveness of proof, but because of his failure to meet the unequivocal contractual obligation of keeping books and records from which the insurer can accurately determine the loss. We concur in the findings of fact and in the reasons for judgment given by the trial judge.
The judgment appealed from is affirmed at appellant’s cost.
Affirmed.